Tracy FREDERICK, also known as Tracy *Friederich* and *Tracy Fredrich*, and Victor Frederick, Plaintiffs, Appellants, and Cross-Respondents,

v.

Joseph FREDERICK, also known as Joseph or Joe Friedrich, Defendant, Respondent, and Cross-Appellant.

Tracy FREDERICK, also known as Tracy Friederich and Tracy Fredrich, and Victor Frederick, Plaintiffs, Appellants, and Cross-Respondents,

v.

John FREDERICK, also known as John Fredrich, Defendant, Respondent, and Cross-Appellant.

Civ. Nos. 8599, 8600.

Supreme Court of North Dakota.

April 22, 1970.

Rehearing Denied June 12, 1970.

Mackoff, Kellogg, Kirby & Kloster, and Greenwood, Swanson, Murtha & Moench, Dickinson, for plaintiffs, appellants, and cross-respondents.

Harvey J. Miller, Dickinson, and Floyd B. Sperry, Bismarck, for defendant, respondent, and cross-appellant.

STRUTZ, Judge.

The plaintiff, Tracy Frederick, with her son Victor as her attorney in fact, brought

separate actions against Joseph Frederick and John Frederick to quiet title to certain Dunn County real estate described in the complaints. The two cases were combined for purposes of trial. Each defendant denied the plaintiff's claim and asserted ownership of the property described in the complaint in the action to which he was a party, demanding that title to such property be quieted in him.

The plaintiff is the widow of Alois Frederick, who passed away on January 31, 1953. During his lifetime, the said Alois was the owner of the land described in the complaints in the two actions and also of other property, both real and personal. On May 12, 1950, Alois and his wife, the plaintiff, joined in warranty deeds conveying the Northeast Quarter (NE¼) of Section 31–142–92 to Joseph Frederick and the Northeast Quarter (NE¼) of Section 29–142–92 to the defendant John Frederick. At the same time, warranty deeds were made and executed conveying certain property to children other than the named defendants, and a bill of sale covering all of the personal property of the grantors was prepared and executed.

On December 6, 1951, Alois Frederick and the plaintiff joined in the execution of other warranty deeds, one of which conveyed the West Half of the West Half (W½W½) of Section 32–142–92 to the defendant Joseph, and another deed conveyed the East Half of the West Half (E½W½) of Section 32–142–92 to the defendant John Frederick.

All of the warranty deeds contained the following reservation:

"Parties of the first part reserve a life estate in the above real estate; after the death of both parties of the first part, the above real estate shall belong to the party of the second part, without reservation or any lien or encumbrance whatsoever."

After the execution of the first deeds on May 12, 1950, at which time Alois was blind, the deeds were kept in a box in the home of the grantor in Richardton. Subsequently, on February 14, 1951, Alois rented a safety-deposit box in the Farmers State Bank of Richardton, in his name individually. The deeds which had been executed on May 12, 1950, then were placed in this safety-deposit box and, when the deeds of December 6, 1951, were executed, they also were deposited in this box.

Because of his blindness, Alois always had his wife, the plaintiff, accompany him when he opened the safety-deposit box. She had possession of the keys during such visits to the bank, and at other times the keys were kept at their home.

All of the deeds remained in the safety-deposit box until December 22, 1953, approximately eleven months after the death of Alois. At that time, the deeds were removed by the plaintiff and she, in the company of the defendants, took them to Manning, North Dakota, where they were recorded in the office of the Register of Deeds. After the deeds had been placed on record, they were returned to the plaintiff who again placed them in the safety-deposit box in the bank. The record discloses that the deeds were recorded at that time in order to clear up the title so that an oil and gas lease could be given on the property.

The defendants contend that although there was no actual, physical delivery of the deeds to them during the life of the grantor, there was constructive delivery of these deeds. To support this contention, they assert that after the deeds had been executed they, on separate occasions, asked their father if they could buy portions of the land, but he told them that it would not be necessary for them to buy because he had prepared deeds to them, although nothing was said as to what particular land had been deeded. The defendants also claim that they were informed that the deeds to the land belonging to the grantor were in the bank and that the keys to the safety-deposit box were at the grantor's home. The defendants further claim to have made valuable improvements on the property, and they assert that they did this relying upon

the assurance of the grantor that the land had been deeded to them.

The trial court held for the defendants on the question of delivery, finding that there was a constructive delivery of the deeds to the named grantees. On the matter of the attempted reservation of a life estate in the plaintiff, the court held that such attempted reservation was void because the plaintiff was a stranger to the title to the land deeded. The court did find, however, that the defendants would not receive absolute and complete title to the lands described in the deeds until the death of both of the named grantors, and that the interest in such lands, which the deceased Alois had attempted to give to his wife by the reservation, would not pass to the defendant grantees but would revert to the grantor's estate, creating in the grantor's estate an estate pur autre vie, for the life of the grantor's wife.

■ The first issue to be determined on this appeal is whether there was a valid delivery of the deeds to the defendant grantees. Under North Dakota law, conveyance by deed takes effect upon delivery of the deed by the grantor. Sec. 47–09–06, N.D.C.C. Such delivery may not be conditional, but must be absolute. Sec. 47–09–07, N.D.C.C. Whether there has or has not been delivery of a deed may be determined from the intention of the grantor. McGuigan v. Heuer, 66 N.D. 710, 268 N.W. 679. And such delivery may be inferred from some act or declaration of the grantor. Shuck v. Shuck, 77 N.D. 628, 44 N.W.2d 767. Unless there has been a delivery of the deed, the deed is of no effect. Stark County v. Koch, 107 N.W.2d 701 (N.D. 1961).

Applying these principles to the facts before us in these cases, was there a delivery of the deeds to the grantees named? There clearly was no actual delivery, because the grantor retained possession of the deeds. The deeds were not seen by the defendants before the grantor's death, and they were kept in the grantor's safety-deposit box at the bank. This box and the keys to it were under the grantor's control during his lifetime, so there definitely was no actual delivery of the deeds.

The trial court found, however, that there had been a constructive delivery of the instruments. The court cited 23 Am. Jur.2d Deeds, Section 111, at 160, to support its finding that there is a strong presumption in favor of delivery if the deed is a voluntary settlement, where the grantee is a member of the family or is a near relative of the grantor, and that the mere fact that the grantor retains possession of the deed *is not conclusive* if there is no circumstance other than the retention of the deed to show that the deed was not intended to be absolute; and that the intention of the parties is the controlling factor in determining the question of delivery (citing 23 Am.Jur.2d Deeds, Section 81, at 133).

■ Our law recognizes that there may be a constructive delivery of a deed, under certain circumstances. Section 47–09–09, North Dakota Century Code, provides:

"Though a grant is not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases:

"1. When, by the agreement of the parties, the instrument is understood to be delivered at the time of execution and the circumstances are such that the grantee is entitled to immediate delivery; or

"2. When it is delivered to a stranger for the benefit of a grantee and his assent is shown or may be presumed."

It is obvious that Subsection 2 of this law would not be applicable to the situation in the cases before us, because there had been no delivery of the deeds to a stranger for the benefit of the grantees. Therefore, if we are to find that there was, in fact, constructive delivery of the deeds to the defendants in these cases, such constructive delivery must have been made under Subsection 1 of the above section.

Let us now look at the record to see if it will support the finding of the trial court that there was constructive delivery of the deeds. There is no evidence to indicate that there was an agreement between the parties that the deeds were understood to have been delivered at the time of their execution. In fact, there is no evidence to show that the defendants even knew of the making of the deeds at the time of their execution. Neither is there any evidence that circumstances existed which show that the defendants, as grantees, were entitled to immediate delivery of the deeds at the time of their execution.

The trial court correctly stated that the intention of the parties is a controlling factor in determining whether there has been a valid delivery of the deeds. In Magoffin v. Watros, 45 N.D. 406, 178 N.W. 134, 136, this court said:

"* * * it was incumbent upon the respondent daughter, asserting title, to show that the deeds were constructively delivered, with an intent to part with the dominion and control over the same."

■ Thus it was incumbent upon the defendants to show constructive delivery. The record is devoid of any evidence showing that the grantor had any intention to part with dominion or control over these deeds or to vest title to the property in the grantees. In fact, the record is clear that his intention was exactly the opposite. He retained possession of the deeds in his bank box, retained the keys to the box in his own possession, and paid the taxes on the land for the intervening years until his death. The grantees did not even know about the deeds at the time they were executed. The defendants claim that he told them, on separate occasions thereafter, that deeds had been prepared and had been placed in his safety-deposit box, and that the keys to the box were in his possession at his home so that if anything should happen to him, the grantor, the grantees would be given the property. But there was no

delivery of the deeds. There was no intention on the part of the grantor to constructively deliver them, since title to the property was not to pass immediately. Had the grantees brought an action to recover the deeds at that time, they clearly would have been unsuccessful because the grantor had retained dominion and control over them. In order that the court may find constructive delivery of the deeds, some evidence must be presented to show that the grantor intended that title to the property should pass to the grantees at the time of execution of the deeds. Constructive delivery may not be based upon mere conjecture. Kirby v. Hulette, 174 Ky. 257, 192 S.W. 63.

■ All of the evidence in the cases before us points clearly to the fact that the grantor did not intend that title to the property should pass to the grantees at the time the deeds were executed. He continued to pay the taxes on the land until his death. It is not contended that he informed the grantees that he had executed the deeds until sometime after he signed them. The grantees were told about the deeds only when they sought to buy some of the land. Even then, the grantor failed to disclose just what particular tracts of land he had deeded to the various grantees, except that the land in Section 29 was included in the deed to John. He merely stated that deeds had been prepared.

Surely, on the record before us, there could not have been any agreement between the parties that the deeds were understood to have been delivered at the time of their execution. There is absolutely no evidence that the grantor intended to deliver the deeds to the grantees during his lifetime. The deeds were not delivered to a stranger for the benefit of the grantees so as to bring the matter within Subsection 2 of Section 47-09-09. The sole purpose of drawing the deeds on the part of the grantor was to avoid the necessity of probate of his estate, which the grantor felt could be accomplished in this manner. The deeds were drawn in lieu of a will. He retained

absolute control over the land and the deeds during his lifetime. He did not divest himself of control over the deeds. Had he so desired, he could have sold the property, and the grantees named in the deeds would have had no claim to it.

It is contended that the grantor, by permitting the defendants to make valuable improvements on the land in reliance upon his statement that he had executed deeds to them and that it would not be necessary for them to buy the land, created in the defendants an implied trust and that the grantor thereafter held such land as trustee for the defendants.

■ In order to establish an implied trust, the evidence must be clear, specific, substantial, and convincing. Rieger v. Rieger, 175 N.W.2d 563 (N.D.1970); Sprenger v. Sprenger, 146 N.W.2d 36 (N.D. 1966).

■ Reviewing the evidence in the light most favorable to the respondents, we find that the evidence is insufficient to establish an implied trust in favor of the defendants in these cases. There is no clear, specific, substantial, or convincing evidence to show that the grantor's conduct was such that it created an implied trust in favor of the defendants. As is already pointed out, there is absolutely no evidence to indicate that the grantor intended to deliver the deeds to the grantees during his lifetime. There is no evidence to indicate that the grantor intended to hold the land for the benefit of the grantees named. The sole purpose of drawing the deeds on the part of the grantor was to avoid probate of his estate. He retained absolute and unquestioned control over the land and over the deeds during his lifetime. Improvements which the defendants made on the land were made for their own benefit as operators thereof. We find that there is no implied trust in favor of the grantees and that there is no clear and convincing evidence to establish such trust.

The defendants next contend that the plaintiff is estopped from attacking the validity of the deeds or from raising the question of delivery thereof; that the plaintiff signed such deeds with her husband and, although she had no actual interest in the title to the lands described, she did, in fact, warrant the title and possession to the grantees named; and that she now is estopped from asserting that there was no delivery of such deeds.

■ Estoppel is based upon misleading words or conduct of one who is to be estopped, relied upon by the party claiming the benefit of the estoppel, which words or conduct induced the party claiming an estoppel to act or to refrain from acting, to his prejudice. Narveson v. Schmid, 77 N.D. 814, 46 N.W.2d 288; Woodside v. Lee, 81 N.W.2d 745 (N.D.1957). The function of estoppel is to prevent fraud, actual or constructive, and the doctrine should be applied to promote justice and to require that to be done which ought to be done between man and man. Kunick v. Trout, 85 N.W.2d 438 (N.D.1957).

Before estoppel will be decreed against the plaintiff, she must have done or said something or failed to do something which caused the defendants in this case to act or to refrain from acting, to their prejudice. Fish v. Berzel, 101 N.W.2d 548 (N.D.1960).

■ We have examined the record, and we find nothing that the plaintiff said or did or failed to do which induced the defendants to act or to refrain from acting, to their prejudice, in these cases. We do not find evidence which would justify our holding that the plaintiff is estopped from denying delivery of the deeds to the defendants.

Inasmuch as we find that there had been no valid delivery, actual or constructive, of the deeds to the defendants, and that the grantor retained absolute custody and control of these documents during his life-

time, and since we further find that the plaintiff is not estopped from asserting the issue of nondelivery thereof, the next issue raised in these cases, to wit, the effect of a reservation of a life estate in the plaintiff, need not be determined. The effect of such reservation, or attempted reservation, would be material only if there had been a valid delivery, either actual or constructive, of the deeds to the defendants. Since we have determined that there was no delivery, this issue need not be decided.

The case is remanded in order that the land involved in this appeal may be included in Alois Frederick's estate for probate.

TEIGEN, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.

On Petition for Rehearing

STRUTZ, Judge.

The defendants have served and filed a petition for rehearing in which they raise several objections to the opinion of this Court in the above cases. They first assert that this Court overlooked the status of Victor Frederick and contend that the appeal should have determined the validity of the deeds which had been given to Victor.

These actions were brought to quiet title to lands which were described in the purported deeds to John and Joseph.

In the amended complaint Victor is named as a party plaintiff, but solely because he was the holder of a power of attorney from the plaintiff, Tracy, to manage and operate the land described in the deeds to John and Joseph. Neither of the plaintiffs, Tracy and Victor, nor the defendants, John and Joseph, requested any determination of the ownership of the lands and property which had been deeded to Victor or to the other children. The only issue before this Court in the above actions was the status of the ownership of the lands described in the deeds to John and Joseph. Therefore, we could not make any determination of the status of the lands described in the deeds to Victor or to the other children. No doubt the administrator who will be, or who has been, appointed to administer the estate of Alois Frederick will make proper demand for any other property which should be a part of the estate.

The defendants again, in their petition for rehearing, argue that there was a constructive delivery of the deeds to the defendants, John and Joseph, and again urge that the plaintiff Tracy Frederick should be estopped by her conduct from denying the title of John and Joseph. Both of these questions have been fully considered in the opinion heretofore rendered and we adhere to the determination made on these issues.

The petition for rehearing is denied.

TEIGEN, C. J., and ERICKSTAD, KNUDSON and PAULSON, JJ., concur.