# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 141

Rudra Tamm, Trustee of the Rudra Tamm
Revocable Trust,

Plaintiff and Appellant

v.

Diane Gatzke a/k/a Diane Sperle; and Herman Eggers,
individually and as Personal Representative of the
Estate of Berit Eggers, Deceased,

Defendants and Appellees

## No. 20250062

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Bonnie L. Storbakken, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice.

Rudra Tamm, self-represented, Bismarck, ND, plaintiff and appellant.

Micheal A. Mulloy, Bismarck, ND, for defendants and appellees.

**McEvers, Justice.**

[¶1]   Rudra Tamm, Trustee of the Rudra Tamm Revocable Trust, appeals from a judgment of dismissal, and an order denying his motion for summary judgment and granting Defendants Diane Gatzke and Herman Eggers's motion for judgment on the pleadings. Tamm argues the district court erred in concluding no easements existed over Defendants' properties, denying his motion for summary judgment, and granting Defendants' motion for judgment on the pleadings. We affirm in part, concluding the court did not err in denying summary judgment; reverse in part, concluding the court erred in granting judgment on the pleadings; and remand for further proceedings.

I

[¶2]   This case involves three tracts of land northwest of Bismarck, adjacent to River Road: Tract 1-B, Tract 2-B, and Tract 3-B. Tamm alleged he, as "Trustee of the Rudra Tamm Revocable Trust," owns Tract 2-B, which lies between the other two tracts; Gatzke owns Tract 1-B (to the north); and Eggers, individually and as personal representative of the estate of Berit Eggers, deceased, owns Tract 3-B (to the south).

[¶3]   Tamm commenced this action for a declaratory judgment as to his "right to use and develop vehicular driveways on the Access Easements on land of Defendants." Tamm alleged Fred Roberts originally owned all three tracts before subdividing them. Tamm alleged that on May 10, 1993, Roberts both subdivided his lot into the three tracts and conveyed Tract 2-B to Scott Johnson. Tamm filed as exhibits to his complaint the May 10, 1993 plat subdividing Roberts' lot, and the May 10, 1993 warranty deed conveying Tract 2-B to Johnson. These documents state they were recorded at noon on May 10, 1993. The plat shows the three tracts with delineated areas on Tracts 1-B and 3-B labeled "Access Easement." Tamm alleged that upon recording of the plat, easements over Tracts 1-B and 3-B were created for the benefit of Tract 2-B. Tamm alleged Johnson conveyed Tract 2-B to him, as "Trustee of the Rudra Tamm Revocable Trust," in

1

2010, along with the access easements. Tamm filed as an exhibit a warranty deed dated June 18, 2010, which states that Johnson conveyed Tract 2-B and "the right to pass and repass over the following two easements . . . as shown on [the 1993 plat]" to "Rudra Tamm, Trustee of the Rudra Tamm Revocable Trust."

[¶4]  After Defendants answered the complaint, Tamm moved for summary judgment and submitted a declaration from himself and an affidavit from Johnson. Defendants opposed summary judgment and moved for judgment on the pleadings. After a hearing, Defendants filed a supplemental brief in response to Tamm's motion for summary judgment along with a declaration from Gatzke and exhibits.

[¶5]  The district court denied Tamm's motion for summary judgment and granted Defendants' motion for judgment on the pleadings, concluding no easements were created on Defendants' properties for the benefit of Tract 2-B. The court entered a judgment of dismissal with prejudice.

II

[¶6]  Before addressing the merits of this appeal, we must consider whether Tamm as a non-attorney trustee may properly represent the Rudra Tamm Revocable Trust on appeal. Tamm as Trustee of the Rudra Tamm Revocable Trust brought suit in this case; Tamm did not sue in his individual capacity. Indeed, he alleged that "Rudra Tamm, Trustee of the Rudra Tamm Revocable Trust," owns Tract 2-B. At no point did Tamm allege or argue that he owns Tract 2-B in his individual capacity.

[¶7]  Throughout the district court proceedings and on appeal, Tamm as trustee has represented the trust without an attorney. We have held that "a corporation may not be represented by a non-attorney agent in a legal proceeding." *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 11, 705 N.W.2d 836. Whether a non-attorney trustee can represent the trust in a legal proceeding appears to be a matter of first impression for this Court. Other jurisdictions, however, have considered this question. The Supreme Court of Alaska concluded "[a] non-lawyer trustee for an express trust may not provide legal representation to the trust, which is a distinct legal person." *Bluel v. Nigg*, 528 P.3d 461, 462 (Alaska 2023). The Court of Appeals

2

of Kansas similarly concluded "a nonlawyer trustee may not represent a trust in a court of law because that would constitute engaging in the unauthorized practice of law." *Schaake v. City of Lawrence*, 491 P.3d 1265, 1272 (Kan. Ct. App. 2021). "Some courts recognize exceptions to the widely accepted rule that a pro se trustee has no right to represent a trust in a court of law," including "permit[ting] a trustee to act pro se where the trustee is the real party in interest or the sole beneficiary of the trust." *Id.* (collecting cases).

[¶8]   At oral argument, Tamm stated that he is the settlor, trustee, and sole beneficiary of the trust. This information does not appear to be a part of the record. None of the parties have raised or briefed this issue at the district court or on appeal. Without a factual record, full briefing, and the district court's review in the first instance, we decline to address this issue of first impression. *See In re Est. of Kautzman*, 2025 ND 57, ¶ 9, 19 N.W.3d 272 (declining review of issue concerning representation on appeal); *Bolinske v. Sandstrom*, 2022 ND 148, ¶ 23, 978 N.W.2d 72 (noting "we are a court of review, not of first view" (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005))). Our decision to decline review in the first instance is informed by the fact that we are remanding the case for further proceedings, and our review of the issues raised on appeal is not a tacit recognition that a non-attorney trustee can represent a trust on appeal. We leave that decision for another day. Nothing we say here would prevent a party or the district court on its own motion from raising this issue on remand through the normal course of proceedings.

### III

[¶9]   Tamm argues the district court erred in granting Defendants' motion for judgment on the pleadings. Defendants moved for judgment on the pleadings under N.D.R.Civ.P. 12(c) and 12(h)(2)(B) on the grounds that Tamm failed to state a claim upon which relief can be granted. We review a court's decision to grant judgment on the pleadings de novo and apply the following standard:

> [W]e recognize that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The court's inquiry is directed to whether or not the allegations constitute a

3

statement of a claim under Rule 8(a), N.D.R.Civ.P., which sets forth the requirements for pleading a claim and calls for a short and plain statement of the claim showing that the pleader is entitled to relief. The complaint is to be construed in the light most favorable to the plaintiff, and the allegations of the complaint are taken as true. The motion for dismissal of the complaint should be granted only if it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted.

*Krebsbach v. Trinity Hosps., Inc.*, 2020 ND 24, ¶ 8, 938 N.W.2d 133.

[¶10] The district court concluded as a matter of law that because Roberts owned all three tracts at the time the plat was recorded, no easement could be created as there were no dominant or servient tenements. "A dominant tenement means the land to which an easement is attached." N.D.C.C. § 47-05-03. "A servient tenement means the land upon which a burden or servitude has been placed." N.D.C.C. § 47-05-04. "A servitude can be created only by one who has a vested estate in the servient tenement." N.D.C.C. § 47-05-05. "A servitude thereon cannot be held by the owner of the servient tenement." N.D.C.C. § 47-05-06. "One cannot have an easement on one's own property." *Griffeth v. Eid*, 1998 ND 38, ¶ 8, 573 N.W.2d 829.

[¶11] Tamm argues at no time did Roberts hold both servient and dominant tenements. Tamm asserts that on May 10, 1993, at noon, Roberts simultaneously divided his property, created the access easements, and conveyed Tract 2-B to Johnson. Both the 1993 plat and warranty deed indicate they were recorded at noon on May 10, 1993. However, "[a] grant takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor and is presumed to have been delivered at its date." N.D.C.C. § 47-09-06. Conveyance by deed therefore "takes effect upon delivery of the deed by the grantor." *CUNA Mortg. v. Aafedt*, 459 N.W.2d 801, 803-04 (N.D. 1990). When there is no actual delivery of the deed, the deed may still be constructively delivered. *Rice v. Neether*, 2016 ND 247, ¶ 8, 888 N.W.2d 749. "The recording of a deed may create a rebuttable presumption of its delivery to, and its acceptance by, the grantee." *Messmer v. Messmer*, 2020 ND 62, ¶ 11, 940 N.W.2d 622.

[¶12] Although the complaint alleges Roberts conveyed Tract 2-B to Johnson on May 10, 1993, it does not state whether the deed was actually delivered from Roberts to Johnson prior to the recording of the plat. Nor does the complaint allege the act of recording the deed was constructive delivery completing the conveyance. Factual questions therefore remain whether the deed was delivered before or after the plat was recorded and whether, as the district court concluded, Roberts owned all three tracts at the time the plat was recorded and held both servient and dominant tenements. Determination of these questions requires factual findings wholly inappropriate for a judgment on the pleadings. *See Rice*, 2016 ND 247, ¶ 9 ("The question of whether there was actual or constructive delivery of a deed is a question of fact."); *Riverwood Com. Park, L.L.C. v. Standard Oil Co.*, 2007 ND 36, ¶ 23, 729 N.W.2d 101 ("On a motion for judgment on the pleadings, the district court may not resolve disputed issues of fact or make findings of fact.").

[¶13] In the complaint, Tamm alleged that "[w]hen [the plat] was prepared, submitted to the City for approval, and recorded, [ ] Roberts owned all three tracts." One reading of this standalone allegation is that Roberts still owned Tract 2-B at the time the plat was recorded. Another reading of this allegation in the context of the rest of the complaint is that when Roberts went to record the plat and warranty deed on May 10, 1993, he still owned all three tracts and that the act of recording the documents divided his property, created the access easements, and conveyed Tract 2-B to Johnson. Under our standard of review, the complaint is construed in the light most favorable to the plaintiff. *Krebsbach*, 2020 ND 24, ¶ 8; *Tibert v. Minto Grain, LLC*, 2004 ND 133, ¶ 18, 682 N.W.2d 294 (noting that complaints are "construed liberally so as to do substantial justice").

[¶14] Even if we read this allegation to be an admission by Tamm that Roberts owned all three tracts at the time of recording the plat, judgment on the pleadings remains unwarranted. *See Krebsbach*, 2020 ND 24, ¶ 8 (stating dismissal "should be granted only if it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted"). In addition to Tamm's claim that an easement was created by recording of the plat, "an easement may also be created by implication." *Lutz v. Krauter*, 553 N.W.2d 749, 751 (N.D. 1996). For example,

it is both possible and frequent to find one part of a property being used for the service of another part . . . . This use of one part land for the service of another part can be described as a quasi-easement, with the serviced part as the quasi-dominant tenement, and the burdened part as the quasi-servient tenement.

Where a quasi-easement has existed and the common owner thereafter conveys to another the quasi-dominant tenement, the conveyee is in a position to claim an easement by implication with respect to the unconveyed quasi-servient tenement.

*Griffeth*, 1998 ND 38, ¶ 8 (quoting 4 *Powell on Real Property* § 34.08[1], [2] (1994)); *see also Lutz*, at 753 ("[I]f the owner of parcels A and B uses a road over parcel A for ingress and egress from a public highway to a building located on parcel B, a subsequent conveyance of parcel B by an instrument that fails to mention the road, passes an access easement across lot A for the benefit of lot B." (quoting *Horowitz v. Noble*, 144 Cal. Rptr. 710, 718-20 (Cal. Ct. App. 1978))).

[¶15] An easement by implication, or easement implied from pre-existing use, requires "unity of title of the dominant and servient tenement and a subsequent severance; apparent, permanent, and continuous use; and, the easement must be important or necessary for the enjoyment of the dominant tenement." *Griffeth*, 1998 ND 38, ¶ 8. Another type of implied easement is an easement by necessity, which "arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is shut off from access to a road to the outer world by the land from which it is severed or by this land and the land of strangers." *Id.* ¶ 12. Whether either of these implied easements exists requires factual determinations inappropriate for a judgment on the pleadings. *See id.* ¶¶ 6, 9, 11, 13. The district court recognized at least one of these factual inquiries when it denied summary judgment, concluding "the record is silent as to whether there exist other reasonable alternative routes to access Tract-2B to allow the Plaintiff to enjoy his property." This factual determination would likely come into consideration under either implied easement analysis. Although recognized during the summary judgment analysis, the court erred by failing to recognize the same issues in deciding the judgment on the pleadings.

[¶16] Relying on Tamm's assertion that the district court had all the facts it needed to rule on his motion for summary judgment, the court found "[b]ased on the facts before [it]" there was "no clear proof of any easements," and granted Defendants' motion for judgment on the pleadings. The court appears to have conflated the standard for judgment on the pleadings with that of summary judgment. A motion for judgment on the pleadings should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Krebsbach*, 2020 ND 24, ¶ 8. We conclude the court erred in dismissing Tamm's complaint and determining he could not prove any claim that an easement exists. The judgment on the pleadings is reversed.

IV

[¶17] Tamm argues the district court erred in denying his motion for summary judgment. Our standard of review for summary judgment is well established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Krebsbach*, 2020 ND 24, ¶ 7.

[¶18] Whether Roberts' recording of the 1993 plat, which has delineated areas on Tracts 1-B and 3-B labeled "Access Easement," created easements for the

benefit of Tract 2-B requires factual determinations. Tamm acknowledges that the plat itself is "ambiguous as to the identity of the dominant tenement." If the grant of an easement is ambiguous, "extrinsic evidence may be considered to show the parties' intent and summary judgment on that issue [is] not appropriate." *Krenz v. XTO Energy, Inc.*, 2017 ND 19, ¶ 27, 890 N.W.2d 222. "A motion for summary judgment is not an opportunity to conduct a mini-trial," and "summary judgment is inappropriate if the court must draw inferences and make findings on disputed facts to support the judgment." *Hamilton v. Woll*, 2012 ND 238, ¶ 13, 823 N.W.2d 754. Assuming without deciding the act of recording a plat referencing an "Access Easement" can create an easement, genuine issues of material fact remain as to whether Roberts owned all three tracts at the time of recording the plat, precluding an express easement, and whether Roberts intended upon making Tract 2-B the dominant tenement.

[¶19] Turning to implied easements, as noted above, the court concluded the record is silent as to whether there are reasonable alternative routes to access Tract 2-B. In his affidavit, Johnson stated that he lived on the other side of River Road from Roberts' property and spoke with Roberts about subdividing his lot; that he wanted to purchase the middle lot; that Burleigh County did not want any more driveways onto River Road, especially in that area; that the "historic access from River Road to the middle lot" was from the driveway on the south lot, which connected with a roadway across the middle lot and continued through the north lot to an airplane landing strip on top of a bluff; that the roadway was "useful for access from River Road to the landing strip on top of the bluff for Fred Roberts and others with houses and businesses on River Road"; that because he wanted a loop driveway to allow for a large or emergency vehicle to enter and exit without turning around due to difficult terrain, Roberts included the access easements across Tracts 1-B and 3-B on the subdivision map; that because he wanted vehicular access to the top of the bluff, Roberts included a 20-foot wide access easement across Tract 1-B; and that county officials confirmed the only access from River Road to his lot was from "the existing driveways on both sides of [his] lot." A 2003 "Bismarck-Burleigh County Planning & Development Department Staff Report" was filed by Tamm as an exhibit to the complaint, which addressed a request by Johnson to approve a new

plat in order to build a home on Tract 2-B. Planning Commission staff found that access to Tract 2-B "would be provided by using existing access easements located on either side of this lot (a new approach onto River Road is not needed)."

[¶20] In Gatzke's declaration, Gatzke stated that she purchased Tract 1-B in July 1995; that she was not aware of the alleged easement on Tract 1-B when she purchased the property; that "the alleged access easements have not been used as Mr. Tamm describes"; that in her 29 years of ownership, she has not seen a vehicle or ATV use the alleged 20-foot wide access easement going to the top of the bluff, which is over difficult terrain; and that she does not think a vehicle would be able to travel over the 20-foot wide easement.

[¶21] "A party seeking an implied easement has the burden of proving the existence of the easement by clear and convincing evidence." *Griffeth*, 1998 ND 38, ¶ 6. An easement implied from pre-existing use requires apparent, permanent, and continuous use. *Id.* ¶ 8. To go from a quasi-easement to an easement implied from pre-existing use depends upon the owner's use prior to the original conveyance (severance of the property). *Id.* ¶¶ 9-10; *Lutz*, 553 N.W.2d at 752-53. Therefore, the relevant use in this case is Roberts' use of the alleged easements prior to conveying Tract 2-B to Johnson. Johnson's affidavit stated "historic access" from River Road to Tract 2-B was from the Tract 3-B driveway, and the roadway on Tract 1-B was "useful for access from River Road to the landing strip on top of the bluff for Fred Roberts and others with houses and businesses on River Road." These statements, however, provide little evidence as to how often Roberts used the alleged quasi-easements, let alone demonstrate apparent, permanent, and continuous use by Roberts.

[¶22] An easement implied from pre-existing use must also be important or necessary for the enjoyment of the dominant tenement. Similarly, an easement by necessity requires the tract of land be "shut off from access to a road to the outer world." *Griffeth*, 1998 ND 38, ¶¶ 8, 12. "[A]n easement by necessity will not be implied 'if the claimant can obtain a means of access to his land at reasonable expense' or 'if the claimant has another mode of access to his land, however inconvenient, either by another way over his own land or by a right of way over

9

the land of another.'" *Id.* ¶ 12 (quoting 25 Am.Jur.2d *Easements and Licenses* §§ 39, 42, 43 (1996)). "The burden of proving that an alternative mode of access is not available is on the person claiming the easement by necessity." *Id.* (quoting 25 Am.Jur.2d *Easements and Licenses* § 43 (1996)). While Tamm has provided some evidence that the Planning Commission, its staff, or local officials would not permit an access point directly from River Road to Tract 2-B in the past, recognizing or requiring access through Tracts 1-B or 3-B onto River Road, the record is largely devoid of evidence showing that there are no reasonable alternative routes to access Tract 2-B or that Tamm has attempted through reasonable expense to secure access to his land. *See id.* ¶¶ 11, 13. Certainly, there has been no showing by clear and convincing evidence that Tract 2-B cannot be accessed at all through reasonable means.

[¶23] Because there are genuine issues of material fact, we conclude the district court did not err in denying summary judgment.

V

[¶24] We affirm in part, concluding the district court did not err in denying summary judgment; reverse in part, concluding the court erred in granting judgment on the pleadings; and remand for further proceedings.

[¶25] Jon J. Jensen, C.J.
    Daniel J. Crothers
    Lisa Fair McEvers
    Jerod E. Tufte
    Douglas A. Bahr